JOHN TITUS, Individually and as Executor, etc., of WILLIAM TITUS, Deceased, Appellant, v. ALIDA L. T. BASSI and Others, Respondents.

Second Department, February 15, 1918.

Decedent's estate — will — separation agreement "wholly inconsistent" with provisions of prior will.

A separation agreement between a husband and wife, by which on the payment of a large consideration she bound herself to relinquish all claims upon him during his life and upon his estate after his death, and agreed to execute all necessary further assurances reasonably required to make good her promises, and further expressly covenanted with her husband to give him the right to make a will disposing of his property, and that his estate might be disposed of as if she had died during his lifetime, and in pursuance of which she joined with him in conveying his real estate to a corporation in order to effectuate said agreement, is "wholly inconsistent" with the provisions of a prior will devising the residuary estate to the wife in lieu of dower, and, therefore, constitutes an express revocation under section 40 of the Decedent Estate Law.

APPEAL by the plaintiff, John Titus, individually and as executor, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Nassau on the 25th day of June, 1917, dismissing the complaint upon the merits after a trial at the Nassau Special Term.

The plaintiff brought this action individually and as executor of the will of his deceased brother, William Titus, who died in the year 1915, to obtain a judgment that a devise and bequest of the residuary estate to the defendant Alida L.

T. Bassi (formerly Alida L. Titus), the widow of the testator, was adeemed and revoked by a separation agreement executed by the husband and wife in the year 1912. He also asked for a judgment that he was entitled to one-half, and his brother and sister, defendants in the action, each to one-quarter, of certain real estate formerly belonging to the testator, title to which at the time of his death was in the defendant Titus Realty Company, Inc. Plaintiff also claimed that he was entitled to $4,000 of the proceeds of a policy of life insurance for $10,000, issued by the Equitable Life Assurance Society upon the life of the testator. The defendants, brother and sister of the plaintiff, in their answer unite with him in his prayer for judgment that the separation agreement constituted a revocation of the provision in testator's will in favor of the widow. They admit his allegations concerning his right to part of the policy of life insurance, but deny his claim that the testator died seized of real property, asserting that the entire estate was personalty. The defendant Titus Realty Company, Inc., withdrew its answer. The defendant Alida L. T. Bassi answered denying the claim of the plaintiff and his brother and sister that the separation agreement revoked the provision of the will in her favor. She does not deny the plaintiff's allegations concerning his right to share in the policy of life insurance. The trial judge dismissed the complaint upon the merits. There was no adjudication concerning the plaintiff's right to the proceeds of the life insurance policy, because the bequest would only become operative in the event that the residuary devise to the wife was revoked. While the defendants, the brother and sister of the plaintiff, answered joining with him in his claim for judgment against the widow, and while they filed exceptions to the findings of the trial judge and to his refusals to find as requested by them, their appeal has been discontinued and it is suggested on the record that the defendant widow has acquired whatever interest they have in the estate of their deceased brother.

    *Alfred T. Davison* [*James K. Foster* and *William T. McCoun* with him on the brief], for the appellant.

    *Darwin J. Meserole* [*James P. Niemann* with him on the brief], for the respondent Alida L. T. Bassi.

KELLY, J.:

There is substantially no dispute as to the facts. The testator, William Titus, married the defendant, respondent, Alida Bassi (formerly Alida Titus) on April 27, 1898. There was no issue of the marriage. Titus was a resident of East Williston, Nassau county. On February 16, 1903, he made his will, the 7th subdivision of which is as follows:

" *Seventh.* All the rest, residue and remainder of my estate of whatever name, nature or description I give to my wife Alida L. Titus. This provision for my said wife is given to and is accepted by her in lieu of her dower interest in my estate."

In May, 1911, eight years after the execution of the will, the testator and his wife separated. In July, 1911, the wife commenced an action for separation against her husband, who interposed an answer denying many of the material allegations of the complaint. While the action was pending, the parties entered into a separation agreement under their hands and seals and duly acknowledged. It is not the usual formal separation agreement providing for support of the wife. It is a lengthy instrument, containing among other recitals, the following:

" WHEREAS, said party of the first part and said party of the second part have mutually agreed upon what is a reasonable provision for the support and maintenance of the said Alida Lillian Titus past, present and for the remainder of her natural life; and

" WHEREAS, the parties hereto have agreed upon a satisfactory, reasonable and just disposal of all of the property of the said William Titus, party of the first part, free and discharged of any and all past, present and future claims, demands, charges, inchoate right of dower, dower estate, rights, interests, lien, administration as widow, or other property rights of any kind whatsoever of the said Alida Lillian Titus, to the end that the said William Titus, party of the first part, his legal representatives, heirs and assigns, shall hold such property, except such property as by the terms of this indenture is conveyed or paid to said party of the second part or otherwise, as provided herein, to his sole and separate use and sole and separate use of his heirs, legal representatives and assigns."

Among the further covenants in the separation agreement, we find the following:

" 1. It shall be lawful and the respective parties hereto do hereby agree to continue to live separate and apart from each other for and during the term of their natural lives and the said parties hereto shall at all times hereafter live separate and apart from the other the same as if sole and unmarried and reside from time to time at such place or places and to conduct, carry on and engage in any employment, business or trade which either of them shall deem fit, without and free from any control, restraint or interference direct or indirect by the other party hereto."

Paragraphs VIII and IX of the separation agreement show that over $33,000 in cash and property was turned over by William Titus to his wife pursuant to the said separation agreement, and paragraph III recites that the said property was turned over to her for her use and benefit and for her support and maintenance and she agreed that such provision for her support and maintenance was ample and would in fact provide her with a support and maintenance befitting her station in life for and during her life and that said considerations were accepted in full satisfaction and in lieu of her support and maintenance by William Titus during her life.

Under paragraph IV of the said separation agreement the wife covenants that she has " conveyed all her estate, rights, title, interest, inchoate right of dower, dower and other property rights of, in and to all the real property owned by " William Titus to James A. Martin, except the twenty-acre piece valued at $24,000, which was conveyed to her as a part of her consideration for making the agreement.

By paragraph VII of the agreement the wife " agrees that the estate of the said party of the first part [William Titus] after payment of the considerations herein mentioned to the party of the second part [the wife] whether real or personal, shall, subject to his debts and engagements go and belong to the person or persons who would have become entitled thereto if the party of the second part had died during the lifetime of the party of the first part; and the party of the second part further covenants and agrees

that she will permit any will of the party of the first part to be probated, and allow administration upon his personal estate and effects to be taken out by the person or persons who would have been entitled so to do, had she died during his lifetime."

Furthermore, it was covenanted and agreed by paragraph XI of the said separation agreement that the parties hereto " shall and will at any time or times hereafter make, execute and deliver any and all such further and other assurances and things, as the other of said parties, or the said parties for the time being, shall reasonably require, for the purpose of giving full effect to these presents, and to the covenants, conditions, provisions and agreements thereof."

As a further indication of the fact that the parties to the said separation agreement intended by the execution thereof to be through with each other for all time, we find the defendant Bassi covenanting under paragraph XII of the said separation agreement, that in case the marriage should be dissolved by order of court, then the consideration passing to her under said agreement " shall be and stand as full satisfaction and discharge of alimony, counsel fee and other claims and demands which might or could be made by the party of the second part against the party of the first part for any cause whatsoever."

Concurrent with the execution of the said separation agreement and as a part of the same transaction, and in order to carry into effect the intention of the parties that they should be through with one another for all time and thereafter " live separate and apart from the other the same as if sole and unmarried * * * without and free from any control, restraint or interference direct or indirect by the other party hereto," the defendant wife and William Titus executed and delivered to one James A. Martin six deeds covering all the real property which the said William Titus then owned. Five of these deeds by which the wife conveyed any right of dower which she might have, referred to specific pieces of property, but the sixth conveyance was general in its terms and the property conveyed by it is described as follows:

" All real property, property appurtenant to real property,

easements, rights of ways, other rights, estates and interests in real property of every kind and nature both legal and equitable and all property of the nature of real property, all now owned in fee or otherwise, or possessed by the said William Titus, one of the parties hereto of the first part and the interest or right in any real property which he may have excepting so much thereof as by certain deeds bearing even date herewith and recorded herewith conveyed premises at Noyack Bay, Suffolk County, Rushmore Property in the Town of Oyster Bay, Nassau County, Searington Property, 4.627 acres on South side of Road leading from East Williston Station to Jericho; premises on North side of said road conveyed to James A. Martin, party of the second part hereto, and 20 acres on the south side of said road to Alida Lillian Titus, one of the parties hereto of the first part."

All of the property which Martin received as above mentioned was conveyed by him to the Titus Realty Company, Inc.

The defendant Titus Realty Company, Inc., was incorporated on the 17th day of January, 1912. It was formed "To take over all the property of Mr. Titus, particularly the realty property on account of the agreement made with his wife; in other words, to make a legal record of it and place the title of it in the company so formed by him in accordance with the agreement as to his future life."

After the will was made and years before the separation agreement was entered into, the wife was informed of the making of the will. In 1903 she was informed that Mr. Titus had made provision for her in the will ": and had made that firm and strong." A year or two after he made the will he told her he had made it.

William Titus died December 10, 1915. Twenty days after his death, his widow married Antonio Bassi.

From the date of its execution in 1903 to his death in 1915, Titus never saw his will, which was in the continuous possession of his attorney. During his life he was addicted to the excessive use of intoxicating liquor, and careless in business affairs. At the date of his death his estate consisted entirely of personal property, to wit, the entire capital stock of the Titus Realty Company, the corporation organized at

the time of his separation from his wife for the purpose of effecting the provisions of the separation agreement.

On these facts, which are substantially undisputed, the plaintiff, individually and as executor of his deceased brother's will, asked the court to find that the provisions of the 7th paragraph of the will of 1903, which devised the residuary estate to the widow in lieu of dower, were revoked by the separation agreement. Plaintiff insists that by retaining the property and consideration given to her under the separation agreement she is estopped from receiving under the residuary devise in the will, and that if the agreement did not revoke the will she should be compelled in equity and good conscience to perform her specific covenants and agreements to make. said separation agreement effectual.

The learned trial judge in dismissing the complaint on the merits, said: " Testator's estate at the time of his death consisted wholly of personal property. The separation agreement was not an instrument prescribed by statute for the revocation of a will (Decedent Estate Law, sec. 34). It did not declare that the existing will, or any part of it, was revoked. It was not executed with the same legal formalities as a will," which was entirely correct. He continues: " Nor does it seem to me that sections 39 and 40 of the Decedent Estate Law have any application to the present case. These sections provide when a conveyance of a testator is or is not to be deemed a revocation of a bequest or devise. They refer only to devises or bequests of specific property, and not to the gift of the residuary, as in the present case. For explanation of the meaning of these sections see Revisers' Notes (3 R. S., 2d Ed., 631, secs. 54, 55, 56). The separation agreement was not a conveyance of testator by which his estate or interest in property, previously devised or bequeathed by him, was altered, within the meaning of sections 39 and 40 of Decedent Estate Law."

From this statement of the legal effect of the separation agreement in this case, we are compelled to dissent. We are of opinion that to allow this lady who executed the separation agreement in evidence, with its clear and specific covenants and stipulations upon her part, who received upwards of $33,000 from her husband upon its execution, and who joined

with him in deeds given to effectuate it, to now assert a right to the residuary estate, would be inequitable and unjust. She lived separate and apart from her husband from the day she signed the agreement down to his death. She never even saw him or met him, and twenty days after his death she married another man. We think she is forcing his estate to pay her for what she has already been paid.

The error of the learned trial judge below is in the statement that sections 34, 39 and 40 of the Decedent Estate Law (Consol. Laws, chap. 13; Laws of 1909, chap. 18) have no application to the present case. These sections of that law are as follows:

" § 34. Revocation and cancellation of written wills. No will in writing, except in the cases hereinafter mentioned, nor any part thereof, shall be revoked, or altered, otherwise than by some other will in writing, or some other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed; or unless such will be burnt, torn, canceled, obliterated or destroyed, with the intent and for the purpose of revoking the same, by the testator himself, or by another person in his presence, by his direction and consent; and when so done by another person, the direction and consent of the testator, and the fact of such injury or destruction, shall be proved by at least two witnesses."

" § 39. Conveyance, when not to be deemed a revocation. A conveyance, settlement, deed, or other act of a testator, by which his estate or interest in property, previously devised or bequeathed by him, shall be altered, but not wholly divested, shall not be deemed a revocation of the devise or bequest of such property; but such devise or bequest shall pass to the devisee or legatee, the actual estate or interest of the testator, which would otherwise descend to his heirs, or pass to his next of kin; unless in the instrument by which such alteration is made, the intention is declared, that it shall operate as a revocation of such previous devise or bequest.

" § 40. Conveyance, when to be deemed a revocation. But if the provisions of the instrument by which such altera-

tion is made, are wholly inconsistent with the terms and nature of such previous devise or bequest, such instrument shall operate as a revocation thereof, unless such provisions depend on a 'condition or contingency, and such condition be not performed, or such contingency do not happen."

There was no revocation of the will under section 34.

Section 39 provides that a conveyance, settlement, deed or other act of a testator by which his estate or interest in property previously devised or bequeathed by him shall be altered, but not wholly divested, shall not be deemed a revocation of the devise. Then follows section 40: " But if the provisions of the instrument by which such alteration is made, are wholly inconsistent with the terms and nature of such previous devise or bequest, such instrument shall operate as a revocation thereof, unless such provisions depend on a condition or contingency, and such condition be not performed, or such contingency do not happen."

There is no condition or contingency in the separation agreement. The case appears to be exactly within the provisions of section 40, and the defendant, respondent's intention clearly appears. She wanted to be rid of her husband, and she bound herself, as plainly as the English language permitted, to relinquish all claim upon him during his life and upon his estate after his death. She went further, and agreed to execute all necessary further assurances reasonably required to make her promises binding. She expressly covenanted that her husband should have the right to make a will disposing of his property, and that his estate, "whether real or personal, shall, subject to his debts and engagements, go and belong to the person or persons who would have become entitled thereto if the party of the second part [the wife] had died during the lifetime of the party of the first part " (the husband), and she agrees that she will permit " any will " of her husband to be probated and allow administration upon his personal estate to be taken out by the person or persons who would have been entitled so to do " had she died during his lifetime."

Referring to her agreement that her husband's property should " go and belong to the person or persons who would have become entitled thereto if the party of the second part

had died during the lifetime of the party of the first part,"
we are not left in doubt as to who these parties were, because
the will, paragraph 8, provided for the disposition of
testator's estate " Should my wife Alida L. Titus die before
me." It would seem that no clearer case can be presented
to the court of the intention of the wife and her husband at
the time she executed this agreement and joined with him
in conveying his real estate to the corporation in order to
effectuate the separation contract.

The learned judge at Special Term says that, while he is
not entirely satisfied that the husband was not willing to
pay his wife twice for the release of her dower rights, still,
assuming that he did intend to revoke the bequest, " the
intent alone was not sufficient to revoke it. There can be
no revocation of a will or a part of a will except in the
manner prescribed by statute," and he cites the revisers'
notes and the doctrine of " implied revocation " as a fruitful
source of difficulty and expensive litigation. He says: " The
wife, by the separation agreement, did not contract that
she would not take anything which her husband might give
her by will, and she cannot be called upon to specifically
perform a contract which she did not make." All this is
aside from the fundamental question whether the provisions
of the separation agreement and the deeds executed to
effectuate it, were not " wholly inconsistent " with the pro-
visions of the will devising the residuary estate to the wife
in lieu of dower. If they were inconsistent, the residuary
devise was revoked perforce section 40 of the Decedent Estate
Law, when the separation agreement and the conveyance were
executed in 1912. If the residuary devise was revoked then,
it was dead and could not be revived save by a new will duly
executed. If the husband, as intimated in respondent's brief,
retained some respect or affection for his wife, certainly it
was not to his discredit. But it is impossible to read the
separation agreement and the deeds and to avoid the con-
clusion that the bequest and devise to her in the executed
will was at that time canceled, destroyed and nullified; to
use her own words in the agreement, as if she had " died
during his lifetime." True, she did not covenant that she
would not take anything her husband might give her by

will, nor did he covenant that he would not subsequently make another will. If, the day before his death, he had made a new will in her favor, a different case might be presented. The question here is the intention of the parties when the agreement of 1912 was executed. Was not that agreement absolutely inconsistent with the provisions in her favor in the existing will? If so, those provisions were from thenceforth of no avail, and she must point to some other valid devise or bequest. And there is none. She married twenty days after her husband's death, before the will was probated.

The counsel for respondent argues that the husband lived for four years after the separation agreement, and had opportunity to reflect and consider the provisions for his wife contained in the will, and he could have revoked it or changed its disposition, but " it was his wish to leave it undisturbed." If the testator indulged in reflection on the subject, he knew that his wife had separated from him and released all her interest in his estate, past, present and future, by language as sweeping and comprehensive as could be devised. The will as to her had been revoked — the testator's property passed to those who would take under its provisions, as if she had died in her husband's lifetime. Counsel says that, in Titus' case, his interest in his property was not altered, but was wholly divested, ignoring the fact that in furtherance of the separation agreement his real estate was simply transferred to a corporation organized for the purpose, of which he held all the capital stock.

This is not an " implied revocation," as claimed by respondent; it is an express revocation, as provided in section 40 of the Decedent Estate Law. Counsel mistakenly assumes that some additional act was necessary, that the husband had to do something more than execute the separation agreement, pay the $33,000 and convey his property to effect a revocation, and that the residuary clause was still in force.

The case of *Burnham* v. *Comfort* (108 N. Y. 535), upon which respondent relies, has no bearing on the question here presented. The question in that case was whether a voluntary payment made by a father to his daughter of a sum

of money in consideration of which she gave him a receipt, stating that the money was received as part of her father's estate, amounted to a satisfaction of the devise of an estate in remainder to the daughter. The court said: " The rule of ademption is predicable of legacies of personal estate and is not applicable to devises of realty." The question was, whether a specific devise could be revoked by satisfaction. The testator in the *Burnham* case did not execute any instrument whatever, let alone an instrument such as is mentioned in sections 39 and 40 of the Decedent Estate Law. The court said: " The writing, which testator took from his daughter, was not an agreement in any sense binding upon him." But the court referred to the provisions of the statute, and said: " And they do contemplate a revocation of a devise of property, previously devised by testator, to be operated, where the testator's interest in such property has been altered, but not wholly divested, by some conveyance, settlement, deed or other act of the testator, only when the instrument * * * declares the intention that it shall operate as a revocation of such previous devise, *or its provisions are wholly inconsistent with the terms and nature of such previous devise.*"

We believe that the execution of the separation agreement in 1912, with its mass of detail, its reference to the husband's estate, the release of all claim of the wife, past, present and future, her consent to the probate of any will, and that testator might regard her as dead, so that the property would go to others, followed by his deed of his property to the real estate company in exchange for all its stock, in which deed the respondent joined in furtherance of the separation agreement, and payment to her of cash and conveyance of real estate of the aggregate value of over $33,000, worked a revocation of the 7th clause in the will, by which the residuary estate was devised to her. If it was revoked, it was gone and could not be restored without republication. (Chancellor Kent in *Walton* v. *Walton,* 7 Johns. Ch. 258.)

It follows that the judgment appealed from should be reversed. We think, however, that there should be a new trial of the action. While the residuary clause of the will was revoked, and the property of the testator passes under the other provisions of the will, the trial judge made no

findings of fact or conclusions of law concerning the plaintiff's right to share in the policy of life insurance, or as to the other issues raised by the pleadings. This was because the dismissal of the complaint upon the theory that the residuary estate passed to the respondent made such findings and adjudications unnecessary. The parties are entitled to litigate these matters, and the acquisition by the respondent of the interest of the brother and sister of the plaintiff in the estate makes a new trial necessary, at which the rights and interests of the respective parties may be determined.

The judgment should be reversed and a new trial granted, costs to abide the final award of costs.

JENKS, P. J., THOMAS, PUTNAM and BLACKMAR, JJ., concurred.

Judgment reversed and new trial granted, costs to abide the final award of costs.