In the Matter of the Probate of the Will of FRED I. COTE, Deceased.

Surrogate's Court, Broome County, March 26, 1949.

*David Levene* and *Robert A. McKenney* for Pauline G. Cote, proponent.

*John Harbachuk* for Felix Cote and another, contestants, and as special guardian for Joseph L. Cote and another, infants, respondents.

PAGE, S. Fred I. Cote and his wife, Pauline G. Cote, were married in New Jersey in 1918. In 1919, they became residents of Broome County. Shortly thereafter they established a restaurant business, which later became " Teddy's Inn " a bar and grill, at Port Crane, a suburb of Binghamton. Later, Mr. Cote set up a similar business in the city of Binghamton, from which time it appears that Mr. Cote devoted himself more especially to the latter and his wife to the former. On or about September 17, 1946, a separation agreement was entered into between decedent and his wife, particular provisions of which are to be hereinafter examined and discussed. Mr. Cote was killed in a highway accident March 18, 1948.

At the date of said separation agreement, there existed the decedent's presently propounded last will and testament, giving his entire estate to his wife, which had been duly executed on the 30th day of July, 1932. The will had been originally left with the attorney who supervised its execution, and was produced from this source after decedent's death. A copy had been delivered to decedent which, after his death, was found in a safety deposit box which he had rented shortly before the date of the separation agreement and which the bank records showed that he had visited from time to time thereafter.

Excluding (because of objection under section 347 of the Civil Practice Act) all testimony offered by the petitioner as to business affairs between her husband and herself, there remains sufficient other proof to show (and it is conceded in respondents' brief) that she co-operated extensively with decedent, " worked long and hard ", in acquiring his and her property as it existed at the date of the separation. Documentary proof shows they owned five parcels of real property as tenants by the entirety, which were taken over solely by decedent, and two retained by petitioner pursuant to the separation agreement, besides considerable personal property which they owned either jointly or in common, and of which similar disposition was also made. To approximately equalize the division, petitioner received from her husband a $19,000 bond secured by a realty and also a chattel mortgage.

This is a proceeding for probate in which there is no question presented as to the validity of the will in its inception. Full compliance with section 21 of the Decedent Estate Law is conceded. Also, there is no question raised as to there ever having been any revocation of the will under any method prescribed in section 34 of the Decedent Estate Law.

Sections 39 and 40 (which, it would logically seem, should have been legislatively set up in a single section) deal with the question as to the effect upon a pre-existing will of some subsequently executed instrument whereby title to property tentatively subject to the operation of the will is alienated or modified. These sections provide:

" § 39. *Conveyance, when not to be deemed a revocation.* A conveyance, settlement, deed, or other act of a testator, by which his estate or interest in property, previously devised or bequeathed by him, shall be altered, but not wholly divested, shall not be deemed a revocation of the devise or bequest of such property; but such devise or bequest shall pass to the devisee or legatee, the actual estate or interest of the testator, which would

otherwise descend to his heirs, or pass to his next of kin; unless in the instrument by which such alteration is made, the intention is declared, that it shall operate as a revocation of such previous devise or bequest.

" § 40. *Conveyance, when to be deemed a revocation.* But if the provisions of the instrument by which such alteration is made, are wholly inconsistent with the terms and nature of such previous devise or bequest, such instrument shall operate as a revocation thereof, unless such provisions depend on a condition or contingency, and such condition be not performed, or such contingency do not happen."

It may be noted in passing that the provisions of sections 39 and 40 are closely related to but not identical with the situation presented in cases of ordinary ademptions, and, in the same manner, that they are likewise, in effect, somewhat analogous to but yet different from the methods of testamentary revocations prescribed by section 34. Under sections 39 and 40 there may be a revocation but it is not of the will itself, but, rather, of gifts provided therein, either specific, general or residuary.

A reading of the separation agreement here in question shows at a glance that the portion of the statutory regulation of such a situation as appears here contained in the part designated as section 39 is inapplicable in this case. This is so because of the absence of any express declaration of an intention " that it (in this case the separation agreement) shall operate as a revocation " of devises or bequests in the precedent testamentary instrument. This section clearly provides that as long as any right, title or interest is retained, unless the subsequent instrument expressly directs otherwise, the provisions of a precedent will, though they may be altered, are not extinguished. They remain operative *pro tanto.*

The contention of objectants herein is that the petitioner's expectancy under the will, consisting of the entire estate of decedent, is annulled or revoked by virtue of the provision of section 40. The underlying theory of this contention is that the property provisions contained in the separation agreement are, definitely and unequivocally, " wholly inconsistent " with the provision of the will giving everything to deceased's widow.

The provisions of the separation agreement particularly relied on, as stated in respondents' brief, are as follows:

" 5. The wife covenants and agrees that she will release her right of dower or its equivalent as her distributive share in the estate of her husband, in any land or real estate or personal property of every name and nature of which the husband may

hereafter be seized or possessed, and that she will execute, acknowledge and deliver at the request of the husband or his legal representatives, without cost or expense to her, all such deeds, releases or other instruments as may be necessary to bar, release or extinguish such right of dower, as well as any other rights which would otherwise inure to her benefit.

" 7. The husband hereby expressly releases any rights which he may have or which he may at any time acquire, to share in any property of the wife, and agrees to and does hereby release and waive any rights to share in the wife's estate which are given to a surviving spouse under the amendments of the Decedent's Estate Law of the State of New York in effect September 1, 1930 or thereafter in effect. The wife also releases and waives all her right to share in the husband's estate pursuant to the same statutes.

" 17. The wife and husband each agree to make, execute and deliver to the other such further instruments as may be necessary and proper to carry out the intent of this agreement."

The presentation of his theory by counsel for respondents exemplifies great ability and persuasiveness in exercising the art of advocacy. Yet, as it seems to me, the language upon which he is compelled to rely does not primarily go any further than providing for a property arrangement *inter vivos*. To a limited extent it is also postmortuary. But the latter would be only in relation to the parties' respective nontestamentary or testamentary-elective *rights*. The language does not, as has been so ably contended, necessarily comprehend testamentary *gifts*. The purpose and intent of the separation agreement was to bring about an approximately equal division of mutually-owned property. To accomplish this effectively, it seems to have been an idea of the attorneys who drafted the instrument, would involve freeing of all of it from any question concerning rights of dower and other statutorily prescribed special provisions in relation to spouses. The agreement aims to do so to the extent that such restrictions might or could be regarded as applicable. All of this is to the end that each of the parties might be assured of the absolute surrender of all statutory rights of the other during their respective lives and as to the estate of whichever one might predecease the other.

The prime objective of the separation agreement was to deal with and dispose of matters of *right*. There is no apparent intent to limit either's privilege to give, or the other's ability to take, as much or as little as either might choose to will to the other. As to the wife, the only language which is susceptible

of being regarded otherwise in any degree is the last part of above-quoted paragraph 5, ending with the words, " other rights which would otherwise inure to her benefit ". But this expression must be interpreted in relation to the context in which it is found. The obvious over-all intent and purpose of the instrument was and is to provide for unquestionably relieving decedent's property from dower or any other spousal incumbrance which it, apparently, was supposed might or could impede its free alienability by him as the sole owner during his lifetime, or by his legal representatives, distributees, legatees or devisees upon his death, as to any and all property of which he might die seized or possessed.

A careful examination of all provisions contained in the separation agreement fails to disclose a basis for any conclusion other than that it was the mutual intent of the parties to scrupulously refrain from any and all reference to any will or anything whatever in relation to any testate benefit which either might choose to voluntarily accord to or preserve for the other. The terms of the separation agreement, by which, *inter alia*, the parties forswore their·respective rights, under section 18 or section 83 of the Decedent Estate Law, left each perfectly free to execute a will, unaffected by these statutes, to any beneficiary or beneficiaries, including the other spouse, he or she might choose. The decedent, desiring to leave everything to his wife, had made and preserved and, after the date of the separation agreement, although then completely free to will his entire net estate otherwise, continued to carefully preserve his previously executed will in favor of his wife.

There is no provision contained in the separation agreement which is " wholly inconsistent " or inconsistent at all with the testator's *voluntary giving* his estate to his wife if she survived him, and it would, therefore, have seemed a senseless gesture to have made a new will subsequent to the separation agreement and identical with the will he already had except for being dated at a later time. It is implicit in the contract that, along with the proprietary as well as personal freedom, mutually bargained, it was contemplated in and by the separation agreement that each party thereto was to be guaranteed absolute freedom of disposition of his or her estate by will. As a corollary, if either died intestate (subject to any applicable statute not referred to such as section 200 of the Surrogate's Court Act, e.g. *Matter of Burridge,* 261 N. Y. 225), his or her legal distributees, exclusive of the surviving spouse, would take all the net estate.

In order to reach the conclusion that the above-quoted (or any other) provisions of the separation agreement are " wholly inconsistent " with the provisions of the will, we are required to determine the sufficiently expressed intent derivable from an examination of the separation agreement in all its aspects and, also, in the light of circumstances surrounding its execution. A question of construction is presented. Primarily the criterion is some words in the subsequent instrument so irreconcilable with or repugnant to bequests or devises in the precedent will that there is no room left for a rational argument that the terms did not, necessarily embrace an ademption of the testate provisions.

The estates of curtesy and dower based on marital relationship, abolished in 1930, were superseded by the provisions of sections 83 and 18 of the Decedent Estate Law, prescribing, respectively, a surviving spouse's distributive status and right of election to take against the will of a deceased spouse. Because of the applicability of the ante-1930 law, as to the husband's real property acquired prior to September, 1930, the release of dower would have been highly essential in carrying out an agreement such as this strictly from an *inter vivos* standpoint. A provision for the release of dower in relation to real property that might be subsequently acquired by the husband was likewise important in the years previous to 1930. Although such a provision was contained in the present separation agreement, of course, it has no bearing or effect because the 1930 statutory substitutes for dower are not applicable to real property of which the husband was seized during coverture, but which he had alienated previous to his death.

The case authorities cited, discussed and urged on the part of respondents as showing subsequent instruments to be rather easily held " wholly inconsistent " with and, therefore, revocatory of precedent wills, comprise: (*Titus* v. *Bassi* [1918, 2d Dept.], 182 App. Div. 387; *Matter of Loeb* [1935], 155 Misc. 863; *Matter of Wallace* [1944], 184 Misc. 448; affd. 268 App. Div. 1029 [1st Dept. 1945]; *Matter of Gilmour* [1932], 146 Misc. 113; *Matter of Burridge* [1933], 261 N. Y. 225; *Matter of William Hagen* [1922], 119 Misc. 770, affd. 206 App. Div. 682 [1923, 2d Dept.]; *Matter of Cook* [1926], 244 N. Y. 63, 68).

A reasonable usage of space does not permit a one-by-one analysis of all these cases with a view to showing their common distinguishment from the situation here presented. However, in my view, all are distinguishable.

The case of *Titus* v. *Bassi* (*supra*) is the one to which most prominent attention is given as authority for the proposition

that the comprehensive provision for decedent's widow contained in his will was revoked *in toto* by the subsequent separation agreement. That case is similar in respect to presenting the effect of a separation agreement in its relation to a previous will. The separation agreement in that case, among other things, provided that the husband was to hold the property taken by him under the agreement, "to his sole and separate use and sole and separate use of his heirs, legal representatives and assigns". It further provided that the wife agreed that the estate of the husband shall "go and belong to the person or persons who would have become entitled thereto if the party of the second part (wife) *had died during the lifetime* of the party of the first part (husband)". (Emphasis supplied.) In this case, the husband had made a precedent will giving his estate, mostly or entirely, to his wife, but (in this respect unlike the present case) also providing to whom the estate should go in the event that his wife should predecease him. Reading this provision of the will in conjunction with the last above-quoted covenant of the separation agreement results in an inescapable conclusion that the intent of the separation agreement was to do away with the wife's precedent bequest. There are also a number of other points of distinguishment between *Titus* (*supra*) and the present case. The separation agreement involved in that case was so definitely "wholly inconsistent" with the effectuation of the provisions of the precedent will that there could be no serious question of the applicability of section 40 of the Decedent Estate Law.

But this is a far cry from the situation here presented. In the present case, on the part of the wife, she convenanted a release of her inchoate dower (although it does not appear that she had any, or, the agreement being subsequent to 1930, that she ever could acquire any) and also her inchoate marital right as a distributee of her husband and her right of election pursuant to the provision of section 18. On the proposition that a specific release of dower or similar prospective estate or right arising because of some status such as marital relationship, New York cases uniformly hold that the releasing instrument cannot be construed as being any more extensive in its application and effect than the specified right or rights, either expressly or by unmistakable implication, released. For some of the authorities to this effect, see: (*Matter of Colaci* [1942], 288 N. Y. 158; *Jardine* v. *O'Hare* [1910], 66 Misc. 33; *Matter of Brown* [1934], 153 Misc. 282; *Thompson* v. *Thompson* [1937], 163 Misc. 946; affd. 254 App. Div. 601 [1938, 3rd Dept.]).

In the case of *Schoonmaker* v. *Crounse* (18 N. Y. S. 2d 853 [1940], affd. 261 App. Div. 77 [1941, 3d Dept.]) the situation presented to the court, involved a precedent will wherein the wife had given her entire net estate to her husband. In this case, a subsequent separation agreement was entered into between the husband and wife. Among other things, this separation agreement provided that, " * * * the same (covenants in the separation agreement) to run to the executors, administrators and assigns of the parties hereto, and each to hold whatever property there may hereinafter own in their own individual name, free from any claim or demand, curtesy, dower, maintenance, support or the like, as though they had never married * * *."

In this case the Appellate Division affirmed the judgment of the trial court which had approved the Surrogate's determination that: " A careful reading of the separation agreement fails to disclose an intent to revoke the will. No reference whatever is made to the testamentary instrument throughout the whole document, nor is there any language in the same susceptible of being understood as a revocation of the will offered for probate."

In this case, the court also further stated and held: " The principle involved, furthermore, has already been passed upon by this court in *Thompson* v. *Thompson* (254 App. Div. 601, affg. 163 Misc. 946). The theory in that case was that a separation agreement, which did not *expressly* cut off a wife's rights under section 18 of the Decedent Estate Law, could not be held to cut off those rights by implication. In the present case, application of the same principle means that the defendant's rights under his widow's will are not affected by a separation agreement which apparently deliberately avoided reference to the will." (Emphasis supplied.)

In the present case, the apparently deliberate avoidance of mention of the precedent will is very similarly presented. In this and in all other respects it appears that the present case is not, in principle, substantially distinguishable from the *Crounse* case (*supra*). If this is a correct conclusion then, in the absence of any State-wide authority to the contrary, even though there be some variance among the departments, the third department has " laid down the law " applicable in its territory in a situation so closely analogous to that before the court in the *Crounse* case.

Moreover, the construction of the statute (Decedent Estate Law, § 40) seems well warranted in accordance with the above enunciated princple, particularly because of the word " wholly "

as found in the statute. The implication of this word, in considering subsequent title alteration contended to be repugnant to a precedent will, would seem to band the construction of the statute somewhat in the direction of resolving any doubt as to contractual purpose and intention in favor of permitting *both* the will and subsequent title-altering or property-alienating instrument to be effectuated insofar as the two are not unquestionably and unequivocally inconsistent with each other.

Primarily, the construction of the statutory provision (Decedent Estate Law, §§ 39, 40) requires that the subsequent instrument must affirmatively show the contractual purpose as to precisely what intestate rights or testate expectancies were to be revoked, cut down or otherwise modified. The present subsequent instrument (separation agreement) goes so far as to show that the contractual intent was a reciprocal relinquishment by each of his or her testate-elective and *intestate* rights in the estate of the other. But it went no further than this. Neither by express language, nor upon any fair basis of implication, is there anything to be found in the instrument having any bearing or effect whatsoever as to the right that either spouse might have in a pre-existing (or any other) will of the other, provided the will, ambulatory until the death of its maker, remains unrevoked and unaltered at his death and becomes thereupon duly entitled to be admitted to probate.

In the present case, much less than being in support of any apparent intent of the willmaker, a revocation of its provisions would be far more likely to be violative of his intent at the time he made the subsequent-separation agreement. This conclusion is accentuated by a consideration of the circumstances surrounding the parties at the time the separation agreement was executed and further supported by the, apparently, deliberate attitude of the decedent manifested thereafter, indicating very affirmatively that he had never had any thought other than that his wife would remain his sole testamentary beneficiary unless and until he should sometime see fit to revoke his old, or make a new will or both. At the time, September 17th, 1946, when the separation agreement was executed, the will, pursuant to decedent's instance and request, had been left in the custody of the attorney who drew it. Upon or after executing and delivering the separation agreement, he did not change this method of safeguarding the will's preservation. On August 1, 1945, about a year before the execution of the separation agreement, he rented a safety deposit box in a local bank. According to the bank's record, he obtained access to this box on several occasions after

he had made the separation agreement. According to the uncontradicted evidence he was never accompanied by anyone and it is not reasonable to suppose that anyone else had access to the box. From this, it is entirely clear that he placed the will copy in his safety deposit box either shortly before the separation agreement was made or intermediate the making of this agreement and his death. Whichever way this was, it is strongly corroborative of his intention that the will should remain in full force and effect. There is no evidence of any particular ill-will between the parties except insofar as this might be inferred from the fact of the separation agreement. They had maintained their cohabitation as husband and wife for about twenty-seven years and worked together in acquiring the property mutually owned by them. If the petitioner had not signed this agreement or any other alienation of her title to any property, as it has turned out, she would, by virtue of her having survived her husband, now be the owner of all the previously mutually-owned property.

The provision in the separation agreement that each agreed to execute any further instruments in effectuation of the intent of the separation agreement has been urged as, in some way, showing that the intention of this agreement was a mutual release as to any and all prospective interests in each other's estate, both testate and intestate. But it does not appear that any such auxiliary instrument, except deeds terminating tenancies by the entirety, was ever executed. All of the surrounding circumstances tend to show the decedent's intent that, unless or until he saw fit to change or revoke his existing will, it would be controlling upon his death in favor of his wife who, in his apparent opinion, if she survived him, had a better right than his collateral relatives to his consideration and the benefit of his property when he was through with it.

Settle decree on notice, admitting the propounded last will and testament of Fred I. Cote, deceased, (Exhibit 1 in Evidence) to probate, and directing that letters testamentary be issued to said Pauline G. Cote, the executrix nominated therein, and determining that said Pauline G. Cote is entitled to take all the net estate of said decedent.