In the Matter of the Estate of ALFRED J. MARUCCIA, Deceased. ETHELYN MARUCCIA et al., Appellants; DOROTHY COSTA et al., Respondents.

First Department, January 8, 1981

APPEARANCES OF COUNSEL

*William S. Ellis* of counsel *(Ellis, Stringfellow, Patton & Leibovitz,* attorneys), for appellants.

*Robert Markewich* of counsel *(James Proud* and *Markewich Rosenhaus Markewich & Friedman, P. C.,* attorneys), for appellant.

*Howard Bindelglass* of counsel *(Kim E. Baptiste* with him on the brief; *Marshall, Bratter, Greene, Allison & Tucker,* attorneys), for Dorothy Costa, respondent.

*Asher Marcus* of counsel *(Peter James Johnson* and *Roy F. Scaffidi* with him on the brief; *Leahey & Johnson, P. C.,* attorneys), for Laura Maruccia and another, respondents.

OPINION OF THE COURT

BIRNS, J.

The sole issue on this appeal is whether the provisions of the decedent's separation agreement with Ethelyn, his sec-

ond wife, are "wholly inconsistent" with the provisions of his will in her favor so as to work a revocation of those testamentary provisions under EPTL 3-4.3.

Decedent's first marriage to Laura Maruccia ended in divorce. They had had two children, Barbara and Dorothy. Decedent married Ethelyn Maruccia in February, 1957 and this marriage produced two daughters as well, Marianne and Camille. On June 24, 1966 decedent executed his last will and testament. It is evident from article SECOND thereof that decedent sought to bar his first wife from receiving any part of his estate. Under article THIRD, decedent bequeathed all of his stock in his real estate corporation to his second wife and bequeathed his half interest in a real estate partnership in five equal shares to his four children and his second wife. In article SEVENTH, decedent appointed his second wife and a friend, Dr. Jonas, as executors and trustees under the will. The residue of the estate was devised in five equal shares to his four children and his second wife.

On June 1, 1976, decedent and his second wife entered into a separation agreement. Under article THIRD thereof, decedent was obligated to pay lump sums of $2,500 in 1976 and $5,000 in the years 1977 through 1981, with such obligation to survive husband's death and secured by a mortgage described in article NINTH. Under article SEVENTH, the second wife transferred to the decedent certain stock, title to real property, and claim to a joint bank account and certificate of deposit, all of unknown value. The husband transferred to the wife certain stock and claim to a mortgage, both of unknown value under article EIGHTH. Article FIFTEENTH stated that the agreement was the entire understanding of the parties, each of whom had been represented by counsel, and that "[t]here are no representations, warranties, promises, covenants, or undertakings other than those expressly set forth herein." The critical provision on this appeal is article TWELFTH which states: "TWELFTH: Except as hereinbefore stated, each party hereto releases and relinquishes to the other party all claims or rights which may now exist or hereafter arise by reason of the marriage between the parties with respect to any property,

whether real or personal, belonging to such other party and, without limiting the foregoing, each party hereby waives and releases to the other party all right to share in any of the property or estate of such other party which has arisen or may hereafter arise by operation of the law or otherwise, and hereby specifically waives and releases all right of dower or curtesy, or rights in lieu thereof, and all rights to share in the estate of the other party under the intestacy laws of any jurisdiction and all right of election to take against (a) any Last Will and Testament of such other party whether executed prior or subsequent to the execution hereof or (b) any testamentary substitute or inter vivos transfer made by the other party and all right to administer the estate of such other party."

The separation agreement was not filed with the clerk of the Supreme Court until August 1, 1977. The parties never obtained a divorce. Decedent never executed another will to supersede the 1966 document. On October 28, 1977, Alfred died.

In the probate proceedings, Ethelyn initially was issued preliminary letters testamentary. The first wife and the children of decedent's first marriage, all respondents on this appeal, filed objections on the basis that the separation agreement revoked the testamentary provisions in favor of the second wife. Cross motions for summary judgment followed.

The Surrogate found the language employed in the separation agreement was wholly inconsistent with testamentary disposition in favor of the second wife and held such provisions revoked. The court therefore revoked the preliminary letters testamentary previously issued to her and stated it would issue letters testamentary to Dr. Jonas only upon his duly qualifying for the fiduciary capacity.

There should be a reversal of the provisions of the decree appealed from. The provisions of the separation agreement were not "wholly inconsistent" with the *voluntary* bequests and appointment in the second wife's favor set forth in the will. The provisions of the separation agreement dealt merely with waiver of statutory rights, which upon the husband's death might benefit his second wife. The legislative

history of EPTL 3-4.3, supports the judiciary's narrow construction of such waiver clauses and the tendency to find against waiver unless specific, precise language is used.* This view is sensibly based upon the consideration that decedent has ample opportunity to revoke or alter the will itself. Of course, the failure of decedent to change his will is not dispositive as the statute still works a revocation by operation of law in some circumstances. Indeed, in *Matter of Hollister* (18 NY2d 281), where decedent had not altered her will, the court found such a revocation in the terms of a separation agreement entered into eight years after the execution of the will. However, the Court of Appeals in *Hollister* indicated its approval of *Matter of Silberstein* (108 NYS2d 88, 92), which required that the agreement " '*expressly* provide for a release or waiver of all rights and interests in the estate of each other or used language from which such an intent could reasonably· be implied.' " (18 NY2d, at p 287 [emphasis supplied].) No revocation was found in *Silberstein* where the language of the separation agreement related only to waiver of intestate and elective statutory rights and not specifically to a waiver of voluntary testamentary provisions. The language used in the *Hollister* separation agreement (p 286), included a release of " 'any and all right, title and interest in and to the property or estate of the Wife (whether now owned or hereafter acquired), her executors and administrators, heirs at law and next of kin, which the husband now has or may have' ". This language was found to be sufficiently express and posi-

---

* Report No. 8.2.5A of the Temporary State Commission on the Modernization, Revision and Simplification of the Law of Estates (NY Legis Doc, 1966, No. 19) notes, at pages 744-745: "The results in the decided cases turn on the character of the language employed in the waiver clause of the agreement—and results are variant because each case is necessarily decided on its peculiar facts. The marked tendency in the cases is for a narrow construction of the language of the waiver clause and a finding against waiver. In support of this tendency, the courts are prone to note that the decedent had ample opportunity to revoke or alter his will in the manner prescribed by statute, and failed to do so, and '[W]hile it is recognized that sections 39 and 40 may operate to revoke a testamentary gift under the circumstances existing in certain cases . . ., *the inclination should not be in the direction of avoiding or weakening the statutory requirements as to the revocation of testamentary dispositions . . . a solemn testamentary instrument should not be rendered ineffectual upon conjecture as to the motivation of a testator who in his lifetime had ample opportunity to revoke or to amend the instrument had he desired to do so.*' "

tive to work a revocation of testamentary provisions. In *Matter of Coffed* (46 NY2d 514, 520), the Court of Appeals did question Hollister's validity where the parties have been divorced, in light of the adoption of EPTL 5-1.4, which works an automatic forfeiture in the event of divorce. But the specific holding of *Coffed* was that a general release which discharged a contractual obligation to execute a reciprocal will, was not "wholly inconsistent" with the reciprocal will itself and did not serve to revoke the reciprocal will. Thus, *Coffed* reaffirmed the rule of the *Hollister* case.

It is clear that the language used in article TWELFTH of this separation agreement relates only to a waiver of statutory rights deriving from the parties' marital relationship and not to voluntary testamentary provisions. Indeed, the provision calls for a relinquishment of all rights "which may now exist or hereafter arise by reason of the marriage between the parties" and waives all rights to share in the estate "which [have] arisen or may hereafter arise by operation of law or otherwise, and hereby specifically waives and releases all right of dower or curtesy, or rights in lieu thereof, and all rights to share in the estate of the other party under the intestacy laws of any jurisdiction". There is no mention of a release of rights under dispositions under a will. The use of the words "or otherwise" following "by operation of law", does not bar testamentary provisions but should be construed under the rule of interpretation of *ejusdem generis*, which limits the open-ended word to matters similar to those specifically mentioned before it. In this case, only statutory rights were mentioned before "or otherwise."

This appeal is simplified by two other factors which clearly dictate the survival of the testamentary provisions in the second wife's favor. First, the separation agreement provision concludes with a release of "all right of election to take against (a) any Last Will and Testament of such other party whether executed prior or subsequent to the execution hereof or (b) any testamentary substitute or inter vivos transfer made by the other party and all right to administer the estate of such other party." It could hardly be accidental once such specific language was used, all relating to statutory rights including a right to elect against

a will and to administer an intestate estate, that there was no mention made of taking under the will itself or of being executor of the estate under a will. Second, the language used in the separation agreement appears to be so precisely restricted to a waiver of statutory rights that one can only conclude that it was intended to fall precisely under the holdings of *Matter of Silberstein (supra)*, and *Matter of Cote* (195 Misc 410, 414), which found a waiver of only "matters of *right*" and not indicative of an intent "to limit either's privilege to give, or the other's ability to take, as much or as little as either might choose to will to the other." Thus, the provisions of the separation agreement should be seen as not at all inconsistent, and certainly not "wholly inconsistent" with the testamentary disposition in favor of the second wife.

It should also be noted that there was no evidence of any ill will or malice between decedent and his second wife such as to cause a desire on the part of decedent to disinherit his wife of 10 years.

Accordingly, the decree of the Surrogate's Court, New York County (MIDONICK, S.), entered April 7, 1980 so far as appealed from and as limited by petitioner-appellant's brief should be reversed on the law and the second and fourth decretal paragraphs of said decree stricken and the third decretal paragraph thereof modified to allow Ethelyn Maruccia to qualify for letters testamentary, with costs payable out of the estate to all parties filing briefs.

KUPFERMAN, J. P. SILVERMAN, BLOOM and CARRO, JJ., concur.

Decree, Surrogate's Court, New York County, entered on April 7, 1980, reversed, on the law, and the second and fourth decretal paragraphs of said decree stricken and the third decretal paragraph thereof modified to allow Ethelyn Maruccia to qualify for letters testamentary, with $75 costs and disbursements of this appeal to each party appearing separately and filing separate briefs, payable out of the estate.